No. 22-55305

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT


DOLORES CALDERON,

*Plaintiff-Appellant*,

v.

BIO-MEDICAL APPLICATIONS OF
MISSION HILLS, INC., et al.,

*Defendants-Appellees*.

_____

On Appeal from the United States District Court
No. 2:20-cv-07869-PSG-JEM
Hon. Phillip S. Gutierrez

_____

**APPELLANT'S OPENING BRIEF**

_____

Joseph S. Socher SBN: 241344
JOSEPH S. SOCHER, ESQ., APC
3580 Wilshire Blvd., Suite 1260
Los Angeles, CA 90010
Telephone: (213) 205-6444
Facsimile: (213) 337-8731
jss@socherlaw.com

*Attorneys for Appellant,*
*DOLORES CALDERON*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. ii

TABLE OF AUTHORITIES...................................................... iv

INTRODUCTION ...................................................................... 1

ARGUMENT ............................................................................. 2

I.     CALDERON WAS A QUALIFIED EMPLOYEE AND
DEFENDANT FAILED TO REASONABLY
ACCOMMODATE HER .......................................................... 2

     A.    Claim that Calderon's restrictions had become stricter
is false................................................................................. 5

     B.    There were no operational changes or other changes in
circumstances affecting Calderon's duties. .................... 6

     C.    Even if Calderon was unable to perform essential
duties, Defendant had duty to attempt accommodation
by finding alternative job............................................... 7

     D.    Permanent disability would not be a reasonable
accommodation. ............................................................. 10

     E.    Defendant's insistence on having PCT's who could
perform "full duties" violates the law. ......................... 11

II.     INTERACTIVE PROCESS REQUIRES ACTUAL

*INTERACTION* WITH THE EMPLOYEE ........................... 12

III.    THERE IS AMPLE EVIDENCE OF PRETEXT .................. 15

CONCLUSION ........................................... 19

CERTIFICATE OF COMPLIANCE ......................................... 20

CERTIFICATE OF SERVICE ................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Barnett v. U.S. Air,* 228 F.3d 1105 (9th Cir. 2000) ................................ 13

*Bates v. U.P.S.,* 511 F.3d 974(9th Cir. 2007) ............................................ 2

*Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108 (8th Cir. 1995) ........... 2

*Brantley v. Pisaro,* 42 Cal.App.4th 1591 (1996) ..................................... 19

*Coghlan v. Am. Seafoods Co.,* 413 F.3d 1090 (9th Cir. 2005)................. 16

*Cooper v. Dignity Health,* 438 F. Supp. 3d 1002 (D. Ariz. 2020).............. 3

*EEOC v. Wal-Mart,* 477 F.3d 561 (8th Cir. 2007) ..................................... 2

*Gelfo v. Lockhead Martin Corp.*, 140 Cal.App.4th 34 (2006)................. 11

*Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217 (9th Cir. 1998) ............... 16

*Green v. State*, 42 Cal.4th 254 (2007)........................................................ 2

*Hill v. City of Phx.,* 162 F. Supp. 3d 918 (D. Ariz. 2016) ......................... 3

*Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245 (2000) ........ 2, 10, 12, 13

*Johnson v. United Cerebral Palsy/Spastic Children's Foundation,* 173
Cal.App.4th 740 (2009) ...................................................................... 16

*King v. United Parcel Services, Inc.,* 152 Cal.App.4th 426 (2007) ...................... 2

*Lam v. Univ. of Hawai'i,* 40 F.3d 1551 (9th Cir. 1994).......................... 15

*McGinest v. GTE Serv. Corp.,* 360 F.3d 1103 (9th Cir. 2004).................. 15

*McGregor v. National R.R. Passenger Corp.*, 187 F.3d 1113 (9th Cir.
1999)................................................................................................... 11

*Nadaf-Rahrov v. Neiman Marcus Group, Inc.,* Cal.App.4th 952 (2008) 10

*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359 (2015)........ 13

*Nicholson v. Hyannis Air Serv.,* 580 F.3d 1116 (9th Cir. 2009) ............. 15

*Perez v. Alameda Cnty. Sheriffs' Office*, 678 F. App'x 621 (9th Cir. 2017)
..................................................................................................... 18

*Samper v. Providence St. Vincent Med. Ctr.,* 675 F.3d 1233 (9th Cir. 2012) .................................................................................... 2

*Sargent v. Litton Systems, Inc.*, 841 F.Supp. 956 (N.D. Cal 1994) .......... 4

*Spitzer v. The Good Guys, Inc.*, 80 Cal.App.4th 1376 (2000)............ 4, 7, 9

*Swanson v. Morongo Unified School District*, 232 Cal.App.4th 954 (2014)........................................................................................ 7

*Terry v. City of San Diego* 380 F. App'x 591 (9th Cir. 2010) ................. 15

*Villa v. McFerren,* 35 Cal.App.4th 733 (1995) ........................................ 19

*Zamora v. Sec. Indus. Specialists, Inc.*, 71 Cal.App.5th 1 (2021) .......... 16

**Regulations**

2 Cal. Code of Regs. § 11068 ...................................................................... 4

# INTRODUCTION

The Answering Brief of Defendants/Appellees (collectively referred to as "Defendant") raises few arguments that were not already addressed in the Opening Brief.  They cannot avoid the simple facts that: (a) Plaintiff/Appellant Calderon ("Calderon") was a long term employee and had been working under essentially the same restrictions for many years before they terminated her employment; (b) new manager Robert Hayden declared his intent and hope to get rid of the two disabled employees at the clinic at the earliest opportunity; and (c) Defendant made no real attempt to find a way for Calderon to keep her job or transfer her to a different position.

Furthermore, Hayden's stated objective of ending accommodation for the two disabled employees in the clinic, combined with other circumstantial evidence, indicates that any explanations provided were merely pretexts used to cover up disability discrimination.

The employer bears a heavy burden of persuasion on summary judgment in a disability discrimination case under California law:

> [T]he employer *cannot prevail* on summary judgment on a claim of failure to reasonably accommodate unless it establishes through undisputed facts that (1) reasonable accommodation was offered and refused; (2) there simply was *no vacant position* within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did *everything*

*in its power* to find a reasonable accommodation, but the informal, interactive process broke down because the employee failed to engage in discussions in good faith. *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 263 (2000) (emphasis added); *King v. United Parcel Services, Inc.,* 152 Cal.App.4th 426, 443 (2007) (accord).

When the appropriate standards are applied, summary judgment must be reversed.

## ARGUMENT

## I. CALDERON WAS A QUALIFIED EMPLOYEE AND DEFENDANT FAILED TO REASONABLY ACCOMMODATE HER

Many of the issues in this case, including especially the claims for disability discrimination and failure to accommodate, turn on whether Calderon was a "qualified" employee for purposes of the California Fair Employment and Housing Act's ("FEHA") disability protections. An employee is "qualified" under disability law if he or she able to perform the essential duties of the position "with or without reasonable accommodation." *Green v. State*, 42 Cal.4th 254, 264 (2007). As noted in the Opening Brief, federal courts have generally held that the employer bears the burden of demonstrating that particular duties are "essential." *Bates v. U.P.S* 511 F.3d 974, 991 (9th Cir. 2007); *EEOC v. Wal-Mart* 477 F.3d 561, 568 (8th Cir. 2007); *Samper v. Providence St. Vincent Med. Ctr.,* 675 F.3d 1233, 1237 (9th Cir. 2012); *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1114 (8th Cir. 1995); *Hill v. City*

*of Phx.,* 162 F. Supp. 3d 918, 924 (D. Ariz. 2016); *Cooper v. Dignity Health,* 438 F. Supp. 3d 1002, 1009 (D. Ariz. 2020).

Defendant argues that Calderon was unable to perform the essential duties of her position and that it was not required to offer her an accommodation that excused her from performing the essential duties of her position indefinitely.

The evidence presented, however, raised issues of fact as to whether the heavy lifting duties of her position were actually essential duties and whether she could have performed the essential patient care duties with simple accommodations, such as allowing her to sit for periods of time use a stool, and shifting more sitting tasks from other PCTs to her. Lifting heavy items or transferring patients was not something that was required on a constant or continuous basis. Calderon was not a warehouse worker or delivery person whose job was defined as lifting and transporting heavy items. Rather, lifting heavy items and transferring patients was something that happened a few times per shift and was a "very minor" portion of her day. 3-ER-519. Moving heavy equipment (which was always done with help from other employees) was even rarer. 4-ER-609-10.

Furthermore, even if these were essential duties of the position, Calderon was entitled to keep her position if she could perform them reasonable accommodation, which can include having others assist when needed. *Spitzer v. The Good Guys, Inc.*, 80 Cal.App.4th 1376, 1383

3

(2000); 2 Cal. Code of Regs. § 11068; *Sargent v. Litton Systems, Inc.*, 841 F.Supp. 956, 960 (N.D. Cal 1994).

Other applicable restrictions affected standing, stooping and bending. This could have been mitigated by continuing to allow the use of a stool for tasks that involved crouching or squatting and that they, in fact, had done so. 4-ER-706, 708, 760, 765.[1] A scooter also might have been used for the some of the walking. Defendant questions whether these accommodations would have actually been effective or sufficient, but as there was never any actual good faith interactive process to determine what possible accommodations were available (see Opening Brief at pp. 45-48 and below), it is no position to dismiss the possibility.

Calderon also could have been assigned to take over more of the sitting tasks normally handled by the other PCTs. These are the types of flexible reassignments and restructuring of the employer's "way of doing business," that the law expects for purposes of accommodating disabled employees. *Sargent*, 841 F.Supp. at 961.

---

[1] Defendant argues that this was not raised in opposition to the MSJ below and should be considered waived. However, while the use of a stool may not have been explicitly discussed in the Memorandum of Points and Authorities, it is mentioned at numerous points in the evidence presented in the MSJ and the issue was therefore before the trial court and properly in the record.

Defendant points to one portion of deposition testimony in which Calderon allegedly "admits" that she could not do the job. But the fact is that (a) this is contradicted by numerous other portions of deposition testimony wherein Calderon explains how she was able to do her job, as cited in the Opening Brief, and (b) the question is compound, confusing and multipart to the point that it is difficult to discern exactly what question she was responding to. Although no objection was posed to the form of the question, the nature of the question still renders the testimony ambiguous. Summary judgment should not be granted on the basis of a single snippet of ambiguous deposition testimony from the Calderon.

## A. Claim that Calderon's restrictions had become stricter is false.

As argued in the Opening Brief, the claim that Calderon was unable to perform the essential duties of her job is contradicted by the fact that she had been performing her duties ever since returning to work after her injury in 2015. Having worked in the position for several years, with varying levels of accommodation, strongly indicates that she could perform her duties effectively.

Defendant attempts to counter this point by arguing that Calderon's job restrictions had become significantly stricter. Not so. The restrictions had remained essentially the same for more than four years. See 3-ER-360, 373-78. All of the restrictions regarding standing,

5

sitting, stooping, etc., had remained the same since 2015. The restrictions on lifting were the same from 2018 through 2020. In fact, when Akram received Calderon's latest doctor's note with restrictions, she forwarded it the HR with the comment "no change in work assignment or accommodations at this time." 3-ER-513.

It is also significant in this context that Akram, the employee most familiar with Calderon's work and duties, never told Hayden that the clinic was unable to accommodate Calderon. 3-ER-446-47.

## B. There were no operational changes or other changes in circumstances affecting Calderon's duties.

Defendant also references changes in finances or other circumstances that allegedly made it more difficult to do so than in the past. This claim is contradicted by their own employees' testimony. Hayden testified that neither the COVID-19 pandemic nor the clinic's finances had anything to do with whether Calderon could be accommodated and financial hardship was never an issue. 3-ER-460-61, 472. Both Hayden and Akram also testified that there had been no operational changes at the clinic that changed Calderon's or other PCT's duties. 3-ER-458-59, 499. The clinic's "mitigation" status also had nothing to do with the decision-making as to whether Calderon's could be accommodated. 3-ER-418-21.

In addition, the claim that termination was necessary because Calderon could no longer be assigned "special projects" is contradicted

6

by the fact she had been working as a "float" PCT and generally performing standard PCT duties in addition to "special projects," all along. 3-ER-500.

### C. Even if Calderon was unable to perform essential duties, Defendant had duty to attempt accommodation by finding alternative job.

Furthermore, even if Calderon was unable to perform the essential duties of her job as a PCT, Defendant had an "affirmative duty" to try to find an alternative job. *Spitzer v. The Good Guys, Inc.,* 80 Cal.App.4th 1376, 1389-90. "[A]n employer has a *duty* to reassign a disabled employee if an already funded, vacant position at the same level exists." *Swanson v. Morongo Unified School District*, 232 Cal.App.4th 954, 970 (2014) (internal quotes and citation omitted; emphasis in original). The burden of demonstrating that no such positions exist rests on the employer. *Id.; Jensen,* 263. A mere cursory effort is also not sufficient because the employer must demonstrate that it "did everything in its power" to find an accommodation. *Id.*

Defendant argues that it presented evidence that no available positions existed and that this evidence was uncontroverted. The supposed "evidence" of Defendant's efforts to find a vacant position is scant and not sufficient to eliminate issues of fact.

Rena Battles-Singleton, who was supposed to be overseeing the disability accommodation process, identified several jobs that Calderon

could have performed for the company, including a screener, ward clerk, and receptionist. 3-ER-424. Battles-Singleton also claimed that Ms. Calderon was offered an admin position. 3-ER-424. However, no written offer of such a position has been produced and there is apparently no documentation of such an offer. Calderon denied ever receiving such an offer. 3-ER-362. Thus, based on the testimony of Battles-Singleton, there are issues of fact as to whether an admin position was open and available for Calderon to be transferred into, and whether it was offered.

Other evidence of supposed efforts to search for appropriate positions was seriously lacking. Akram claimed to have called a few area managers to determine if jobs were available for Calderon and the other disabled employee. 3-ER-704. However, Defendant failed to present documentation of these calls or evidence that these calls actually exhausted its duty to find alternative employment for Calderon or the other disabled employee. There are no facts presented as to which jobs or job categories were considered, which managers were contacted, or specifying when they were contacted. It was Defendant's burden to demonstrate that it complied with its duty to make a real, good faith effort to find alternative employment or that no vacant positions were available. Without such specifics Defendant cannot show these efforts were more than cursory and actually complied with its obligations under the law to make a real effort to accommodate Plaintiff

8

or that, as a matter of law, no reassignment to a vacant position was possible.

The efforts of others were also deficient. Battles-Singleton, whose job it is to oversee the disability accommodation process, made a single phone call to the manager of the Van Nuys clinic to ask about open positions. 3-ER-395-97. Battles-Singleton speculated that others may have reached out, she does not recall any emails to the regional clinics to see if Calderon could be accommodated and no evidence of such efforts has been adduced. 3-ER-397-98. She also never provided Calderon with a list of job openings. 3-ER-422. Battles-Singleton was supposed to be overseeing the disability accommodation process and ensuring that it complied with the law. The fact that she did not document any real efforts to find alternative employment strongly indicates that no real efforts were made.

Finally, the evidence also demonstrated that Defendant's policies regarding a disabled employee's transfer to a vacant position violated the law and may have made an attempted transfer futile. First, merely telling employees that they can search and apply for available jobs within the company is insufficient. *Spitzer,* 1389-90. That is essentially what Defendant did here. Once Plaintiff received the three-option ultimatum, Defendant deemed it her responsibility to discover if there were open positions at other clinics and did not provide a list of open jobs to the employee. 3-ER-479.

In addition, Defendants stated that Plaintiff would receive no preference or priority if she applied for another position. This is in direct contradiction to California which requires the employer to give "*preferential*" treatment to a disabled employee. *Jensen,* 265.

### D. Permanent disability would not be a reasonable accommodation.

Defendant also claims that permanent disability was a possible accommodation that had been offered to Calderon. There are a number of problems with this. First, they made no attempt to facilitate a permanent disability, or long-term leave, and never even made the suggestion until Plaintiff was terminated. As described in the Opening Brief, Akram never offered any guidance and Battles-Singleton claimed ignorance of process or even what the phrase meant. 3-ER-399, 505-06.

More importantly, Defendant ignores the fact that the purpose of a reasonable accommodation is to allow the employee to continue working – not to permanently end their employment. *Nadaf-Rahrov v. Neiman Marcus Group, Inc.,* Cal.App.4th 952, 974 (2008) (A "'reasonable accommodation' in the FEHA means… a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job...") Thus "permanent disability" is not, by definition, a reasonable accommodation.

10

## E. Defendant's insistence on having PCT's who could perform "full duties" violates the law.

Defendant disputes the argument that it had, in effect, a "100% healed" policy. As noted in the Opening Brief, "'100% healed' policies are per se violations of the ADA and California law because they use a blanket rule against disabled individuals rather than determining on a case by case basis if the employee can perform the job with reasonable accommodation. *McGregor v. National R.R. Passenger Corp.*, 187 F.3d 1113, 1116 (9th Cir. 1999); *Gelfo v. Lockhead Martin Corp.*, 140 Cal.App.4th 34, 50 n.11 (2006). Defendant argues that it was not imposing a 100% healed policy because it engaged in an individualized evaluation of her abilities in conversations between Hayden, Battles-Singleton, Lilibridge and Akram.

This conflicts with the evidence on several points. First, when Hayden learned that there were two disabled PCTs with work restrictions on the first day he visited and he immediately reacted by stating that he "hope[ed to] make the case that the business can no longer support these accommodations..." 3-ER-461-62, 534. This was before any possible individual evaluation and indicates an intent to have no disabled PCT's working regardless of the specific accommodations they need. This is also supported by Akram's statement to Calderon that they could no accommodate her because

they needed "PCT's performing the *full* duties" in the facility. 3-ER-507-09 (emphasis added.)

Second, although they claim that Akram had determined that accommodation of Plaintiff was no longer possible, they ignore the fact that Akram never told Hayden she had made such a conclusion. 3-ER-446-47.

Finally, as described in greater detail below, there was no actual interactive process with Plaintiff or her physician to determine on an individualized basis if she could actually do the job.

Based on the above, as well as the points raised in the Opening Brief, there were triable issues of fact as to whether Calderon was a "qualified individual" for purposes of California disability law and whether Defendant "did everything in its power to find a reasonable accommodation" for Calderon. *Jensen,* 263.

## II. INTERACTIVE PROCESS REQUIRES ACTUAL *INTERACTION* WITH THE EMPLOYEE

As described in the Opening Brief, Defendant also failed in its duty to engage in a good faith interactive process as required by law. In the Answering Brief, Defendant argues that Calderon cannot prevail on the claim for failure to engage in an interactive process because she has not identified any potential accommodations that could have been granted through the interactive process. As described above and in the Opening Brief, however, there are a number of possible accommodations

12

that could and should have been considered as well as the possibility of transfer to another vacant position consistent with her disability restrictions.

Defendant's argument also ignores the most basic requirement of a good faith interactive process: there must be some *interaction* between the employee and the employer. "FEHA requires an informal process with the employee to attempt to identify reasonable accommodations, not necessarily ritualized discussions." *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 379 (2015). The employer must show that it did "everything in its power to find a reasonable accommodation, but the informal, interactive process broke down because the employee failed to engage in discussions in good faith." *Jensen*, 263. "Both sides must communicate directly, exchange essential information and neither side can delay or obstruct the process." *Barnett v. U.S. Air* 228 F.3d 1105, 1114-15 (9th Cir. 2000). Thus, the law requires *direct communication* between the employee and the employer.

The process also must be in "good faith." In other words, the employer must actually intend to seek a solution that would allow the employee to continue work with some accommodation. Here, Hayden's statement that, "My hope is we can make the case that the business can no longer support these accommodations…," demonstrates that accommodation was *not* Defendant's goal in the process. 3-ER-461, 534.

Rather, the goal was to "make the case" that no accommodation was possible and the employees could be terminated.

None of the individuals involved in the decision-making on Calderon's employment and disability actually *interacted* with Calderon regarding her disability. Battles-Singleton, in charge of the accommodation process, never had any direct communications with Calderon at any point. 3-ER-362, 385, 389-90, 401-02, 422-23. Akram, who was most able to interact with Calderon as her direct supervisor, never asked Calderon what job duties she was physically capable of doing and does not even know what the interactive process is. 3-ER-481, 540-41. Hayden's only interactions with Calderon were (1) she met him and told him about her disability and (2) when he terminated her employment. Neither of those could reasonably be considered an interactive process.

Nor was there any interaction with Calderon's physician. Neither Akram, nor Hayden ever asked Calderon's doctors for input regarding the restrictions and Akram couldn't say of anyone ever did. 3-ER-463, 524, 529-30.

Finally, Battles-Singleton also conceded that there was no breakdown in communication attributable to Plaintiff. 3-ER-412.

Accordingly, whatever process Defendant engaged in was neither in "good faith," nor was it "interactive." It therefore failed to fulfill the requirements of FEHA.

## III.   THERE IS AMPLE EVIDENCE OF PRETEXT

The issue of pretext is applicable both to the issue of disability discrimination and to the claim for retaliation.

A plaintiff's burden to present evidence of pretext on summary judgment is "minimal." *Nicholson v. Hyannis Air Serv.,* 580 F.3d 1116, 1127 (9th Cir. 2009). "[V]ery little evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder." *Id., quoting, McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1124 (9th Cir. 2004); see also, *Terry v. City of San Diego* 380 F. App'x 591, 594 (9th Cir. 2010). "[V]ery little evidence" of pretext is needed "to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry — one that is most appropriately conducted by the factfinder, upon a full record." *Lam v. Univ. of Hawai'i* 40 F.3d 1551, 1564 (9th Cir. 1994) (internal brackets and quotes omitted.)

Defendant points to language in some cases requiring "specific, substantial evidence" of pretext to defeat summary judgment. However, even if this accurately reflects the law, it is recognized that this standard does not apply when there is *direct evidence* of discriminatory intent. "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin v.*

*Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998); *Coghlan v. Am. Seafoods Co.* 413 F.3d 1090, 1095 (9th Cir. 2005).

Further, where the plaintiff presents multiple arguments in support of a finding of pretext, the court must "review the evidence as a whole," and determine whether the multiple factors "*when taken together*, do constitute sufficient evidence to demonstrate a triable issue of fact" as to pretext, even if each individual factor would not be sufficient on its own. *Zamora v. Sec. Indus. Specialists, Inc.*, 71 Cal.App.5th 1, 60 (2021) (emphasis in original), *quoting, Johnson v. United Cerebral Palsy/Spastic Children's Foundation,* 173 Cal.App.4th 740, 758 (2009).

As set forth in the Opening Brief, there are multiple factual and evidentiary bases on which a finder of fact could reasonably conclude that the Defendant's explanation for Plaintiff's termination was pretextual, including: (a) the fact that Plaintiff had been performing the job for years with the same restrictions; (b) the lack of a real interactive process; (c) Hayden's comment that he "hoped" the company could conclude that it could no longer accommodate Calderon and the other disabled employee at the clinic; and (d) the fact that both disabled employees at the clinic were actually eliminated.

Hayden's email is especially significant because a trier of fact could easily find that it constitutes *direct evidence* of discriminatory intent. Defendant claims that Hayden's email has been taken out of

16

context because it wasn't a "command" to human resources - it was simply "asking" HR for guidance on how to proceed. They also claim that the fact that Hayden had "met" with Calderon previously and attached her status report to the email shows a more benign purpose to the email. None of these contentions negates the evidence of discriminatory motive inherent in Hayden's email.

First, regardless of whether the email was technically a "command," it explicitly states the "hope" of the senior manager in charge of the clinic for the conclusion that no further accommodation will be possible. This was not a neutral request. Hayden was making it clear which conclusion he wanted to see come out of the process and was holding his finger one side of the scale.

Furthermore, the email was sent immediately after Hayden's first visit to the clinic, after one brief conversation with Calderon, and with no observation of her work or of the work of the other disabled employee. 3-ER-438-40. He also never requested any clarification from the employees' doctors or engaged in any interactive process with Calderon herself. 3-ER-463.

The nature of Hayden's statement is also reinforced by the fact that the only other disabled PCT at the clinic, Celia Enriquez was also terminated at approximately the same time. Defendant argues there is not sufficient specific evidence of similarity between the two cases to constitute evidence of pretext. This assertion belied, however, the fact

17

that Defendant's employees, including Hayden grouped the two disabled PCT's together and referred to them in the very same email seeking the same result for both employees. Here, Hayden immediately identified two employees in the same position who had been accommodated for disabilities, immediately expressed the hope that they would no longer be accommodated and both employees were eliminated.

Defendant's reference to *Perez v. Alameda Cnty. Sheriffs' Office*, 678 F. App'x 621, 622 (9th Cir. 2017), is inapposite because the comparison there was to other employees who had not been fired but also had not been accused of the same level of misconduct. There is no indication that the other employees in *Perez* were discussed in the same communications and grouped together by management. Furthermore, there is no issue of alleged misconduct here at all.

In addition, the repeated reference the "mitigation status and operational challenges" in explaining the termination is contradicted by the employee testimony described above that finances and mitigation status had nothing to do with the decision-making and that there were no operational changes at the clinic affecting Calderon's status. 3-ER-418-21, 458-59, 460-61, 499. The fact that Defendant now points to these factors is further evidence of pretext and inconsistent explanations in that the arguments made in litigation are contradicted by employee testimony.

18

Defendant also argues that Calderon herself could not testify as to her supervisors' discriminatory motive. This is irrelevant. Calderon was not privy to the discussions or emails between Defendant's employees concerning her employment and disability and could not state what the their states of mind were. A plaintiff's lack of knowledge about matters discussed by defendants to which he or she was not privy is not sufficient to support summary judgment. *Brantley v. Pisaro,* 42 Cal.App.4th 1591, 1601 (1996); *Villa v. McFerren,* 35 Cal.App.4th 733, 748-50 (1995).

Thus, in addition to direct evidence of discriminatory motive, there are multiple items of evidence that, taken as a whole, support the conclusion that Defendant's explanation for Calderon's termination was pretextual.

## CONCLUSION

Based on the foregoing, and all of the points and arguments raised in the Opening Brief, the district court's grant of summary judgment was erroneous and must be reversed.

Date: April 10, 2023             Respectfully submitted,
                                 JOSEPH S. SOCHER, ESQ.

                                 */s/   Joseph S. Socher*
                                 Joseph S. Socher

                                 *Attorneys for Appellant Dolores Calderon*

19

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that: This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,189 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Century Schoolbook 14-point font.

Date: April 10, 2023                    JOSEPH S. SOCHER, ESQ.


                                        */s/   Joseph S. Socher*
                                        Joseph S. Socher

                                        *Attorneys for Appellant Dolores Calderon*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: April 10, 2023          JOSEPH S. SOCHER, ESQ.

         */s/   Joseph S. Socher*
         Joseph S. Socher

         *Attorneys for Appellant Dolores Calderon*